Scott Edelsberg
CA Bar No. 330990
*scott@edelsberglaw.com*
**EDELSBERG LAW, P.A.**
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305.975.3320

*Attorney for Plaintiff and Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MELANIE RICE**, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**FARMERS INSURANCE EXCHANGE, FARMERS GROUP, INC.**,<br><br>Defendants. | Case No. ________________<br><br>**CLASS ACTION COMPLAINT**<br>**1. Negligence**<br>**2. Negligence Per Se**<br>**3. Breach of Implied Contract**<br>**4. Invasion of Privacy**<br>**5. Breach of Fiduciary Duty**<br>**6. Unjust Enrichment**<br>**7. Violation of the Driver's Privacy Protection Act**<br>**8. Declaratory Judgement**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Melanie Rice, individually, and on behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against Defendants Farmers Insurance Exchange, and Farmers Group, Inc. (collectively "Farmers" or "Defendants"), to obtain damages, restitution, and injunctive relief for the Class, as defined below, from Defendants. Plaintiff makes the following allegations on information and belief, except as to her own actions, which are made on personal knowledge, the investigation of counsel, and the facts that are a matter of public record.

## INTRODUCTION

1. Defendants Farmers Insurance Exchange, and Farmers Group, Inc. "make up one of the country's largest insurers of vehicles, homes and small businesses."[1]

2. As a condition of receiving services from Farmers, Plaintiff and Class Members are required to provide Farmers with personal information. When providing highly sensitive information to Farmers, Plaintiff and Class Members expect that Farmers will employ adequate data security practices to protect their information from unlawful disclosure.

3. Upon information and belief, Plaintiff believes the personally identifiable information ("PII") that she provided to Farmers was unlawfully accessed and exfiltrated as a result of a cyber-attack experienced by one of Farmers' third-party vendors in May 2025. ("Data Breach").

4. As explained in detail herein, one of Farmers' third-party vendors detected unusual activity in its databases and ultimately determined that an unauthorized third party accessed its network and obtained certain files from its systems on May 29, 2025 ("Data Breach").[2]

5. As a result of the Data Breach, the Private Information of Defendants' customers, including Plaintiff and the proposed Class members, were stolen, including their driver's license numbers, dates of birth, and last 4 of Social Security numbers. [3]

6. The Data Breach was a direct result of Defendants' failure to vet, monitor, and ensure the integrity of vendor data security procedures and protocols necessary to protect individuals' Private Information with which it was entrusted.

---

[1] https://www.farmers.com/about-us/ (last accessed June 24, 2025)

[2] Notice Letter, Attached hereto as **Exhibit A**

[3] *Id.*

7. Defendants' investigation concluded that the Private Information compromised in the Data Breach included Plaintiff's and other individuals' information.

8. Defendants' failure to safeguard Plaintiff and Class Members' highly sensitive Private Information as exposed and unauthorizedly disclosed in the Data Breach violates its common law duty, California law, and Defendants' implied contract with Plaintiff and Class Members to safeguard their Private Information.

9. Businesses like Defendants that collect consumers' Private Information and provide this information to vendors and/or independent contractors owe the individuals to whom the information relates a duty to ensure that the vendor and/or independent contractor utilizes and adopts reasonable measures to protect the Private Information from disclosure and theft and to keep it safe and confidential. This duty arises under contract, statutory, and common law, industry standards, representations made to Plaintiff and Class Members, and because it is foreseeable that hackers with nefarious intentions will target the Private Information and use it to harm the affected individuals.

10. The possibility of a cyberattack and the potential for improper disclosure of Plaintiff's and Class Members' Private Information if inadequate data security was used by a vendor and/or independent contractor was a known risk to Defendants. Thus, Farmers knew that if it failed to select a vendor and/or independent contractor with adequate data security that Plaintiff's and the Class's the Private Information would be left in a dangerous and vulnerable condition.

11. Upon information and belief, Defendants breached its duties and obligations by failing, in one or more of the following ways: (1) failing to design, implement, monitor, and maintain reasonable network safeguards against foreseeable threats; (2) failing to design, implement, and maintain reasonable data retention policies; (3) failing to adequately train staff on data security; (4) failing

to comply with industry-standard data security practices; (5) failing to warn Plaintiff and Class Members of Defendants' inadequate data security practices; (6) failing to encrypt or adequately encrypt the Private Information; (7) failing to adequately vet, audit, monitor, or ensure the integrity of their vendors' security practices; (8) failing to ensure that their vendors with access to their computer systems and data employed reasonable security procedures; (9) failing to utilize widely available software able to detect and prevent this type of attack, and (10) otherwise failing to secure the hardware using reasonable and effective data security procedures free of foreseeable vulnerabilities and data security incidents.

12. Farmers impliedly understood its obligations and promised to safeguard Plaintiff's and Class Members' Private Information. Plaintiff and Class Members relied on these implied promises when seeking out and paying for Farmers' services. But for this mutual understanding, Plaintiff and Class Members would not have provided Defendants with their Private Information. Farmers, however, did not meet these reasonable expectations, causing Plaintiff and Class Members to suffer injury.

13. Farmers disregarded the rights of Plaintiff and Class Members by, *inter alia*, intentionally, willfully, recklessly, and/or negligently failing to adequately vet, audit, monitor, or ensure the integrity of their vendors' security practices; failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to disclose that their vendor did not have adequately robust computer systems and security practices to safeguard Plaintiff's and Class Members' Private Information; failing to take standard and reasonably available steps to prevent the Data Breach; and failing to provide Plaintiff and Class Members with prompt and full notice of the Data Breach.

14. Plaintiff and Class members now face a lifetime risk of identity theft due to the nature of the information lost, which they cannot change, and which cannot be made private again.

15. Defendants' harmful conduct has injured Plaintiff and Class members in multiple ways, including: (i) the lost or diminished value of their Private Information; (ii) costs associated with the prevention, detection, and recovery from identity theft, tax fraud, and other unauthorized use of their data; (iii) lost opportunity costs to mitigate the Data Breach's consequences, including lost time; (iv) lost benefit of the bargain; (v) invasion of their privacy; and (vi) emotional distress associated with the loss of control over their highly sensitive Private Information.

16. Defendants' failure to protect Plaintiff and Class Members' Private Information has harmed and will continue to harm Plaintiff and Class Members, causing Plaintiff to seek relief on a class wide basis.

17. Accordingly, Plaintiff brings claims on behalf of herself and the Class for: (i) negligence, (ii) negligence per se, (iii) breach of implied contract (iv) invasion of privacy (v) breach of fiduciary duty, (vi) unjust enrichment, (vii) violation of the Driver's Privacy Protection Act and (viii) declaratory judgment. Through these claims, Plaintiff seeks, *inter alia*, damages and injunctive relief, including improvements to Defendants' and their vendors' data security systems and integrated services, future annual audits, and adequate credit monitoring services.

## PARTIES

18. Plaintiff Melanie Rice is a natural person, resident, and citizen of Arkansas where she intends to remain.

19. Defendant Farmers Insurance Exchange is an unincorporated association organized under the California Insurance Code, with its principal place of business in Woodland Hills, California.

20. Defendant Farmers Group, Inc. is a corporation organized under the laws of the state of Delaware, with a principal place of business located in Woodland Hills, California.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendants, namely Plaintiff a citizen of Arkansas.

22. This Court has personal jurisdiction over Defendants because their principal place of business is in this District, they regularly conduct business in this District, and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

23. Venue is proper under 18 U.S.C § 1391(b)(1) because Defendants' principal place of business is in this District.

## BACKGROUND FACTS

### A. Defendants' Business

24. Farmers provides a wide range of products: auto, home, renters, life, and small business insurance, plus specialty coverage.[4]

25. Plaintiff and Class members sought services from Farmers.

26. To receive Defendants' services, Plaintiff and Class Members, were required to provide sensitive and confidential Private Information, including their

[4] https://www.farmers.com/about-us/ (last accessed June 24, 2025)

driver's license numbers, dates of birth, and last 4 of Social Security numbers, that would be held by Farmers and their vendors in their computer systems.

27. The information held by Farmers at the time of the Data Breach included the unencrypted Private Information of Plaintiff and Class members.

28. Upon information and belief, Farmers made promises and representations to Plaintiff and Class Members that the Private Information collected would be kept safe and confidential, the privacy of that information would be maintained, and Farmers would delete any sensitive information after it was no longer required to maintain it, which can be seen in its Privacy Policy.[5]

29. Plaintiff and Class members provided their Private Information to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

30. Plaintiff and Class members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class members relied on the sophistication of Defendants to properly vet their vendors to ensure they have adequate security systems and policies, to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

31. Defendants had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class members from involuntary disclosure to third parties. This duty included ensuring their vendors also adopted reasonable

---

[5] *See* Privacy Policy at https://www.farmers.com/content/farmers/marketing/digital/aem/pdfs/privacy-center/Farmers-Privacy-Notice.pdf ("Protecting your privacy is important to us. We restrict access to personal information to those individuals, such as our employees and agents, who provide you with our products and services. We require individuals with access to your information to protect it and keep it confidential. We maintain physical, electronic, and procedural safeguards that comply with applicable regulatory standards to guard your nonpublic personal information.")(last accessed September 3, 2025)

measures to protect Plaintiff and Class members' Private information. Defendants has a legal duty to keep Plaintiff and Class Members' Private Information safe and confidential.

32. Defendants had obligations under the FTC Act, contract, industry standards, and representations made to Plaintiff and Class members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

33. Defendants derived a substantial economic benefit from collecting Plaintiff's and Class members' Private Information. Without the required submission of Private Information, Defendants could not provide their services.

34. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class members' Private Information, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiff's and Class members' Private Information from disclosure.

**B. Defendants Fail to Safeguard Consumer PII**

35. On or around August 22, 2025, Defendants sending Data Breach victims a Notice of Security Incident letter ("Notice") informing them that[6]:

> **WHAT HAPPENED?** On May 30, 2025, one of Farmers' third-party vendors alerted Farmers to suspicious activity involving an unauthorized actor accessing one of the vendor's databases containing Farmers customer information (the "Incident"). The third-party vendor had monitoring tools in place, which allowed the vendor to quickly detect the activity and take appropriate containment measures, including blocking the unauthorized actor. After learning of the activity, Farmers immediately launched a comprehensive investigation to determine the nature and scope of the Incident and notified appropriate law enforcement authorities.
>
> The in-depth investigation determined that an unauthorized actor accessed the vendor's database on May 29, 2025, and acquired certain data. With the assistance of a third-party data-review expert, Farmers conducted a

[6] Exhibit A.

> comprehensive review to determine what data had been accessed and acquired, whether the data contained personal information, and to whom the personal information belonged. On July 24, 2025, the review determined that some of your personal information was subject to unauthorized access and acquisition.
>
> **WHAT INFORMATION WAS INVOLVED?** The following types of your personal information were involved: Driver's License Number, Date of Birth, Last 4 of Social Security Number.

36. Defendants did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class members, such as properly vetting their vendors and their respective security systems and directing them to encrypt the information or delete it when it is no longer needed, causing the exposure of Private Information.

37. The attacker accessed and acquired files in one of Defendants' vendors' databases containing unencrypted Private Information of Plaintiff and Class members, including driver's license number, date of birth, and last 4 of Social Security number. Plaintiff's and Class members' Private Information was accessed and stolen in the Data Breach.

38. Plaintiff further believes her Private Information, and that of Class members, was subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

**C. The Data Breach was a Foreseeable Risk and Defendants were on Notice**

39. Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in industries holding significant amounts of PII preceding the date of the breach.

40. In light of recent high profile data breaches, Defendants knew or should have known that their vendors' electronic records and PII they maintained would be targeted by cybercriminals and ransomware attack groups.

41. Defendants knew or should have known that these attacks were common and foreseeable.

42. In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[7] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[8]

43. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry, including Defendants.

**D. Defendants Fails to Comply with FTC Guidelines**

44. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

45. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand its network's vulnerabilities; and implement policies to correct any security problems.[9] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming

---

[7] *See* 2021 Data Breach Annual Report (ITRC, Jan. 2022) (available at https://notified.idtheftcenter.org/s/), at 6.

[8] *Id.*

[9] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed August 21, 2025).

traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[10]

46. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

47. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

48. These FTC enforcement actions include actions against insurance providers and partners like Defendants.

49. Defendants failed to properly vet their vendors and ensure they implemented basic data security practices.

50. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to customers and other impacted individuals' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

51. Defendants were at all times fully aware of their obligation to protect the PII. Defendants were also aware of the significant repercussions that would result from their failure to do so.

---

[10] *Id.*

**E. Defendants' Breach**

52. Defendants breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly monitor their vendors to ensure they maintained and safeguarded their computer systems and website's application flow. Defendants' unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a. failing to ensure their vendors maintained an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b. failing to adequately protect PII;

c. failing to properly vet and select their vendors;

d. failing to properly monitor their vendors' data security systems for existing intrusions;

e. failing to ensure that their vendors with access to their computer systems and data employed reasonable security procedures;

f. failing to ensure the confidentiality and integrity of electronic PII it created, received, maintained, and/or transmitted;

g. failing to implement technical policies and procedures for electronic information systems that maintain electronic PII to allow access only to those persons or software programs that have been granted access rights;

h. failing to implement policies and procedures to prevent, detect, contain, and correct security violations;

i. failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports;

j. failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PII;

k. failing to train all members of their workforces effectively on the policies and procedures regarding PII, including their vendors and its workforce;

l. failing to ensure the electronic PII their vendors maintained was unusable, unreadable, or indecipherable to unauthorized individuals;

m. failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act;

n. failing to adhere to industry standards for cybersecurity as discussed above; and,

o. otherwise breaching their duties and obligations to protect Plaintiff's and Class Members' PII.

53. Defendants negligently and unlawfully failed to safeguard Plaintiff's and Class Members' PII by failing to properly vet their vendors and the vendors' respective security measures, allowing cyberthieves to access the vendor's databases, which provided unauthorized actors with unsecured and unencrypted PII.

54. Accordingly, as outlined below, Plaintiff and Class Members now face a present, increased risk of fraud and identity theft. In addition, Plaintiff and the Class Members also lost the benefit of the bargain they made with Defendants.

**F. Data Breaches Cause Disruption and Increased Risk of Fraud and Identity Theft**

55. Cyberattacks and data breaches involving insurance companies and insurance software companies like Defendants are especially problematic because

they can negatively impact the overall daily lives of individuals affected by the attack.

56. The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[11]

57. That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal personally identifiable information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims, take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

58. The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their

[11] *See* U.S. GOV. ACCOUNTING OFFICE, GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (2007) https://www.gao.gov/new.items/d07737.pdf.

credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[12]

59. Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

60. Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

61. Moreover, theft of PII is also gravely serious because PII is an extremely valuable property right.[13]

62. Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that PII has considerable market value.

63. It must also be noted there may be a substantial time lag – measured in years -- between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used.

---

[12] *See IdentityTheft.gov*, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Steps (last accessed September 3, 2025).

[13] *See, e.g.,* John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

64. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[14]

65. PII is such a valuable commodity to identity-thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

66. There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

67. Thus, Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

68. PII can sell for as much as $363 per record according to the Infosec Institute.[15] PII is particularly valuable because criminals can use it to target victims with frauds and scams. Once PII is stolen, fraudulent use of that information and damage to victims may continue for many years.

69. For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines.[16] Such fraud may go undetected until debt collection calls

---

[14] GAO Report, at p. 21.

[15] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, INFOSEC (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/.

[16] *Identity Theft and Your Social Security Number*, SOCIAL SECURITY ADMINISTRATION (2018) at 1, https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed September 3, 2025).

commence months, or even years, later. Stolen Social Security Numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[17] Each of these fraudulent activities is difficult to detect. An individual may not know that their Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

70. Moreover, it is not an easy task to change or cancel a stolen Social Security number.

71. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[18]

72. This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[19]

73. Because of the value of its collected and stored data, the insurance industry has experienced disproportionally higher numbers of data theft events than other industries.

---

[17] *Id* at 4.

[18] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft.

[19] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, COMPUTER WORLD (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

74. For this reason, Defendants knew or should have known about these dangers and ensured their vendors strengthened their databases and computer systems accordingly. Defendants were put on notice of the substantial and foreseeable risk of harm from a data breach, yet Defendants failed to properly prepare for that risk.

**G. Plaintiff's and Class Members' Damages**

75. To date, Defendants have done nothing to provide Plaintiff and the Class Members with relief for the damages they have suffered as a result of the Data Breach.

76. Defendants have merely offered Plaintiff and Class Members complimentary fraud and identity monitoring services for up to 24 months, but this does nothing to compensate them for damages incurred and time spent dealing with the Data Breach.

77. Plaintiff and Class Members have been damaged by the compromise of their PII in the Data Breach.

78. Plaintiff and Class Members' PII was compromised in the Data Breach and are now in the hands of the cybercriminals who accessed Defendants' vendor's software maintaining PII. This PII was acquired by some unauthorized, unidentified third-party threat actor.

79. Since learning of the Data Breach, Plaintiff has spent time dealing with the impact of the Data Breach, valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation.

80. Due to the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. This includes changing passwords, cancelling credit and debit cards, and monitoring their accounts for fraudulent activity.

81. Plaintiff's PII was compromised as a direct and proximate result of the Data Breach.

82. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

83. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

84. Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

85. Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their PII as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

86. Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

87. Plaintiff and Class Members also suffered a loss of value of their PII when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

88. Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiff and Class Members overpaid for Defendants' services that was intended to be accompanied by adequate data security that complied with industry standards but was not. Part of the price Plaintiff and Class Members paid to Defendants was intended to be used by Defendants to fund adequate security of

Defendants' systems, the systems of Defendants' vendors, and Plaintiff's and Class Members' PII. Thus, Plaintiff and Class Members did not get what they paid for and agreed to.

89. Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and sensitive information for misuse.

90. Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

a. reviewing and monitoring sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

b. purchasing credit monitoring and identity theft prevention;

c. placing "freezes" and "alerts" with reporting agencies;

d. spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

e. contacting financial institutions and closing or modifying financial accounts; and

f. closely reviewing and monitoring Social Security numbers, medical insurance accounts, bank accounts, and credit reports for unauthorized activity for years to come.

91. Moreover, Plaintiff and Class Members have an interest in ensuring that their PII, which is believed to remain in the possession of Defendants and their vendors, is protected from further breaches by the implementation of adequate security measures and safeguards, including but not limited to, making sure that the

storage of data or documents containing PII is not accessible online and that access to such data is password protected.

92. Further, as a result of Defendants' conduct, Plaintiff and Class Members are forced to live with the anxiety that their PII may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

93. As a direct and proximate result of Defendants' actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

***Loss of the Benefit of the Bargain***

94. Furthermore, Defendants' and their vendor's poor data security deprived Plaintiff and Class members of the benefit of their bargain. When agreeing directly or indirectly to pay Defendants for the provision of its services, Plaintiff and other reasonable consumers understood and expected that they were, in part, paying for the service and necessary data security to protect their Private Information when, in fact, Defendants did not provide the expected data security. Accordingly, Plaintiff and Class members received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendants.

***Plaintiff Rice's Experience***

95. Plaintiff Rice provided her Private Information to Defendants in connection with the services Defendants provide.

96. Plaintiff Rice is very careful about sharing her sensitive Private Information. Plaintiff Rice has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

97. Plaintiff Rice first learned of the Data Breach after receiving the Notice on or about August 22, 2025.

98. Based on the information she provided to Defendants, Plaintiff Rice has reason to believe that her PII including, but not limited to, driver's license number, date of birth, and last 4 of Social Security number were compromised in this Data Breach.

99. As a result of the Data Breach, Plaintiff Rice made reasonable efforts to mitigate the impact of the Data Breach after receiving notice of the Data Breach, including but not limited to researching the Data Breach, reviewing credit reports, financial account statements, and/or medical records for any indications of actual or attempted identity theft or fraud.

100. Plaintiff Rice has spent significant time and will continue to spend valuable hours for the remainder of her life, that she otherwise would have spent on other activities, including but not limited to work and/or recreation.

101. Plaintiff Rice suffered actual injury from having her PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her PII, a form of property that Defendants and their vendors maintained belonging to Plaintiff Rice; (b) violation of her privacy rights; (c) the theft of her PII; (d) lost benefit of the bargain; and (e) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

102. As a result of the Data Breach, Plaintiff Rice has also suffered emotional distress as a result of the release of her PII, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her PII for purposes of identity theft and fraud. Plaintiff Rice is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

103. As a result of the Data Breach, Plaintiff Rice anticipates spending considerable time and money on an ongoing basis to try to mitigate and address

harms caused by the Data Breach. In addition, Plaintiff will continue to be at present, imminent, and continued increased risk of identity theft and fraud for the remainder of her life.

## CLASS ACTION ALLEGATIONS

104. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated under Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure ("the Class").

105. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **All persons identified by Defendants (or its agents or affiliates) as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach.**

106. Excluded from the Class are Defendants' officers, directors, and employees; any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and Members of their staff.

107. Plaintiff reserves the right to amend or modify the Class definitions as this case progresses.

108. Numerosity. The Members of the Class are so numerous that joinder of all of them is impracticable. Upon information and belief, the Class consists of approximately 1,071,172 individuals whose sensitive data was compromised in the Data Breach.[20]

109. Commonality. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

---

[20] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/8e99d3e3-b1f1-4f30-bbb9-be7dfca5e281.html(last accessed September 3, 2025)

a. if Defendants unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' PII;

b. if Defendants failed to ensure their vendors implemented and maintained reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. if Defendants' vendor's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. if Defendants ensured their vendors' data security systems prior to and during the Data Breach were consistent with industry standards;

e. if Defendants owed a duty to Class Members to safeguard their PII;

f. if Defendants breached their duty to Class Members to safeguard their PII;

g. if Defendants knew or should have known that their vendor's data security systems and monitoring processes were deficient;

h. if Defendants should have discovered the Data Breach sooner;

i. if Plaintiff and Class Members suffered legally cognizable damages as a result of Defendants' misconduct;

j. if Defendants' conduct was negligent;

k. if Defendants' breached implied contracts with Plaintiff and Class Members;

l. if Defendants were unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiff and Class Members;

m. if Defendants failed to provide notice of the Data Breach in a timely manner, and;

n. if Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

110. Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff's information, like that of every other Class Member, was compromised in the Data Breach.

111. Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

112. Predominance. Defendants have engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same vendor's databases and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

113. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a Class action

presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

114. Defendants have acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

115. Finally, all members of the proposed Class are readily ascertainable. Defendants have access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendants.

## FIRST CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Class)

116. Plaintiff repeats and re-alleges paragraphs 1 through 115 of this Complaint and incorporates them by reference herein.

117. Plaintiff and the Class entrusted Defendants with their PII on the premise and with the understanding that Defendants would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

118. Defendants have full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if the PII were wrongfully disclosed.

119. By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendants had a duty of care to use reasonable means to secure and safeguard their computer property, as well as their vendors' computer property—and Class members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendants' duty included a responsibility to implement processes by which it could detect a breach of their vendors' security

systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

120. Defendants owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the PII.

121. Defendants' duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants and individuals who entrusted them with PII, which is recognized by laws and regulations, as well as common law. Defendants were in a superior position to ensure that their vendors' systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

122. Defendants' duty to use reasonable security measures required Defendants to reasonably protect confidential data from any intentional or unintentional use or disclosure.

123. In addition, Defendants had a duty to ensure its vendors employed reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

124. Defendants' duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendants are bound by industry standards to protect confidential PII.

125. Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

a. failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

b. failing to adequately vet their vendors;

b. failing to adequately monitor the security of their vendors' networks and systems;

d. failing to have in place mitigation policies and procedures;

e. allowing unauthorized access to Class Members' PII;

f. failing to detect in a timely manner that Class Members' PII had been compromised; and

g. failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

126. Defendants owed to Plaintiff and Class Members a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendants also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the data breach. This duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the data breach.

127. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to ensure their vendors, *e.g.,* (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

128. Defendants breached their duties to Plaintiff and Class Members by failing to ensure their vendors maintained fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

129. Defendants owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from Defendants' inadequate security protocols. Defendants actively sought and obtained Plaintiff's and Class Members' PII.

130. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendants and their vendors holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendants' vendor's databases containing the PII—whether by malware or otherwise.

131. PII is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class Members and the importance of exercising reasonable care in handling it.

132. Defendants breached their duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and securing the PII of Plaintiff and Class Members—which actually and proximately caused the Data Breach and injured Plaintiff and Class Members.

133. Defendants further breached their duties by failing to provide reasonably timely notice of the data breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the data breach and Plaintiff and Class Members' injuries-in-fact. As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

134. Defendants' breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff

and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the data breach that resulted from and were caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## **SECOND CAUSE OF ACTION**
### **Negligence *Per Se***
### **(On Behalf of the Plaintiff and the Class)**

135. Plaintiff hereby repeats and realleges paragraphs 1 through 115 of this Complaint and incorporates them by reference herein.

136. Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45, Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII.

137. Defendants breached their duties to Plaintiff and Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII.

138. Defendants' failure to comply with applicable laws and regulations constitutes negligence *per se.*

139. The injuries to Plaintiff and Class members resulting from the Data Breach were directly and indirectly caused by Defendants' violation of the statutes described herein.

140. Plaintiff and Class members were within the class of persons the Federal Trade Commission Act was intended to protect and the type of harm that resulted from the Data Breach was the type of harm this statute was intended to guard against.

141. But for Defendants' wrongful and negligent breach of their duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured.

142. The injuries and harms suffered by Plaintiff and Class members were the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties and that Defendants' breach would cause Plaintiff and Class members to experience the foreseeable harms associated with the exposure of their Private Information.

143. As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class members have suffered injuries and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
## Breach of Implied Contract
## (On behalf of the Plaintiff and the Class)

144. Plaintiff hereby repeats and realleges paragraphs 1 through 115 of this Complaint and incorporates them by reference herein.

145. Plaintiff and the Class entrusted their PII to Defendants as a condition of receiving Defendants' services. In so doing, Plaintiff and the Class entered into implied contracts with Defendants by which Defendants agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

146. At the time Defendants acquired the PII of Plaintiffs and the Class, there was a meeting of the minds and a mutual understanding that Defendants would safeguard the PII and not take unjustified risks when storing the PII.

147. Implicit in the agreements between Plaintiff and Class Members and Defendants to provide PII, was the latter's obligation to: (a) use such PII for

business purposes only, (b) take reasonable steps to safeguard that PII, (c) prevent unauthorized disclosures of the PII, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII, (e) reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the PII only under conditions that kept such information secure and confidential.

148. Plaintiff and the Class would not have entrusted their PII to Defendants had they known that Defendants would fail to properly vet their vendors, fail to monitor the security measures implemented by third-parties that Defendants gave the PII to, not encrypt sensitive data elements, and not delete the PII that Defendants no longer had a reasonable need to maintain it.

149. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendants.

150. Defendants breached the implied contracts they made with Plaintiff and the Class by failing to properly vet their vendors, failing to safeguard and protect their personal information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide timely and accurate notice to them that personal information was compromised as a result of the Data Breach.

151. As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and

credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

152. As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages to be determined at trial.

**<u>FOURTH CAUSE OF ACTION</u>**
**Invasion of Privacy**
**(On behalf of the Plaintiff and the Class)**

153. Plaintiff repeats and re-alleges paragraphs 1 through 115 of this Complaint and incorporates them by reference herein.

154. Plaintiff and Class Members had a legitimate expectation of privacy regarding their PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

155. Defendants owed a duty to Plaintiff and Class Member to keep their PII confidential.

156. The unauthorized disclosure and/or acquisition (*i.e.,* theft) by a third party of Plaintiff's and Class Members' PII is highly offensive to a reasonable person.

157. Defendants' reckless and negligent failure to protect Plaintiff's and Class Members' PII constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

158. Defendants' failure to protect Plaintiff's and Class Members' PII acted with a knowing state of mind when they permitted the Data Breach because they knew they did not properly monitor their vendors, and that their vendors' information security practices were inadequate.

159. Defendants knowingly did not notify Plaintiff and Class Members in a timely fashion about the Data Breach.

160. Because Defendants failed to properly safeguard Plaintiff's and Class Members' PII, Defendants had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

161. As a proximate result of Defendants' acts and omissions, the private and sensitive PII of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

162. Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII is still maintained by Defendants with their inadequate cybersecurity system and policies.

163. Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendants' and their vendors' continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendants' inability to safeguard the PII of Plaintiff and the Class.

164. Plaintiff, on behalf of herself and Class Members, seeks injunctive relief to enjoin Defendants from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' PII.

165. Plaintiff, on behalf of herself and Class Members, seeks compensatory damages for Defendants' invasion of privacy, which includes the value of the privacy interest invaded by Defendants, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

## FIFTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Class)

166. Plaintiff repeats and re-alleges paragraphs 1 through 115 of this Complaint and incorporates them by reference herein.

167. In providing their PII, directly or indirectly, to Defendants, Plaintiffs and Class members justifiably placed a special confidence in Defendants to act in good faith and with due regard to interests of Plaintiffs and class members to safeguard and keep confidential that PII.

168. Defendants accepted the special confidence Plaintiffs and Class members placed in it, as evidenced by its assertion that it is committed to protecting the privacy of Plaintiffs' and Class Members' personal information as detailed in its Privacy Policy.

169. In light of the special relationship between Defendants and Plaintiffs and Class members, whereby Defendants became a guardian of Plaintiffs' and Class members' PII, Defendants became a fiduciary by its undertaking and guardianship of the PII, to act primarily for the benefit of those individuals it provided services, including Plaintiff and Class members, for the safeguarding of Plaintiffs' and Class members' PII.

170. Defendants have a fiduciary duty to act for the benefit of Plaintiffs and Class members upon matters within the scope of their relationship with Defendants' customers, in particular, to keep secure the PII of their customers.

171. Defendants breached their fiduciary duties to Plaintiffs and Class members by failing to properly vet their vendors, and failing to ensure their vendors protected the integrity of the systems containing Plaintiffs' and Class members' PII.

172. Defendants breached their fiduciary duties to Plaintiffs and class members by otherwise failing to safeguard Plaintiffs' and Class members' PII.

173. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiffs and class members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of PII; (iii) lost time and opportunity costs associated with attempting to mitigate the

actual consequences of the Data Breach; (iv) loss of benefit of the bargain; and (v) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' and their vendors' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII.

174. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiffs and Class members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## SIXTH CAUSE OF ACTION
## Unjust Enrichment
## (On Behalf of Plaintiff and the Class)

175. Plaintiff repeats and realleges paragraphs 1 through 115 of this Complaint and incorporates them by reference herein.

176. This claim is pleaded in the alternative to the breach of implied contract claim.

177. Plaintiff and Class members (or their third-party agents) conferred a benefit upon Defendants. After all, Defendants benefitted from using their PII to provide services and/or receiving payment.

178. Defendants appreciated or had knowledge of the benefits it received from Plaintiff and Class members (or their third-party agents).

179. Plaintiff and Class members (or their third-party agents) reasonably understood that Defendants would use adequate cybersecurity measures to protect the PII that they were required to provide based on Defendants' duties under state and federal law and its internal policies.

180. Defendants enriched themselves by saving the costs they reasonably should have expended on paying a vendor with insufficient data security measures to secure Plaintiff's and Class members' Private Information.

181. Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendants instead calculated to avoid its data security obligations at the expense of Plaintiff and Class members by utilizing a vendor with cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

182. Under principles of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiff's and Class members' Private Information and/or payment because Defendants failed to adequately protect their Private Information.

183. Plaintiff and Class members have no adequate remedy at law.

184. Defendants should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class members—all unlawful or inequitable proceeds that it received because of its misconduct.

## <u>SEVENTH CAUSE OF ACTION</u>
## Violation of the Driver's Privacy Protection Act
## 18 U.S.C. §§ 2724, et seq. (the "DPPA")

185. Plaintiff repeats and realleges paragraphs 1 through 115 of this Complaint and incorporates them by reference herein.

186. The DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains . . . ." 18 U.S .C. § 2724.

187. The DPPA also restricts the resale and redisclosure of personal information, and requires authorized recipients to maintain records of each

individual and the permitted purpose of the disclosure for a period of five years. 18 U.S.C. § 2721(c).

188. Under the DPPA, a "'motor vehicle record' means any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1). Driver's license numbers are motor vehicle records and "personal information" under the DPPA. 18 U.S.C. § 2725(3).

189. Pursuant to the allegations herein, Defendants knew or should have known that they obtained, disclosed or re-disclosed, and used PII from a motor vehicle record for a purpose not permitted under the DPPA.

190. By engaging in the conduct described above, Defendants knowingly obtained personal information for a purpose not permitted under the DPPA.

191. By engaging in the conduct described above, Defendants knowingly used personal information for a purpose not permitted under the DPPA.

192. By engaging in the conduct described above, Defendants knowingly disclosed or re-disclosed personal information for a purpose not permitted under the DPPA.

193. As a result of Defendants' acquisition, use, subsequent Data Breach, and violations of the DPPA, Plaintiff and putative Class members are entitled to statutory damages to maximum allowable, actual damages, liquidated damages, and attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION

**Declaratory Judgement**

**(On Behalf of Plaintiff and the Class)**

194. Plaintiff repeats and re-alleges paragraphs 1 through 115 of this Complaint and incorporates them by reference herein.

195. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those alleged herein, which are tortious, and which violate the terms of the federal and state statutes described above.

196. An actual controversy has arisen in the wake of the Data Breach at issue regarding Defendants' common law and other duties to act reasonably with respect to employing reasonable data security. Plaintiff alleges Defendants' actions in this respect were inadequate and unreasonable and, upon information and belief, remain inadequate and unreasonable. Additionally, Plaintiff and the Class continue to suffer injury due to the continued and ongoing threat of new or additional fraud against them or on their accounts using the stolen data.

197. Under its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendants owed, and continues to owe, a legal duty to employ reasonable data security to secure the PII they possess, and to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

b. Defendants breached, and continues to breach, their duty by failing to employ reasonable measures to secure their customers' personal information; and

c. Defendants' breach of their legal duty continues to cause harm to Plaintiff and the Class.

198. The Court should also issue corresponding injunctive relief requiring Defendants to employ adequate security protocols consistent with industry standards to protect their customers' (i.e., Plaintiff and the Class's) data.

199. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another breach of Defendants' or their vendors' data systems. If another breach of Defendants' or their vendors' data systems occurs, Plaintiff and the Class will not have an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages, while warranted to compensate Plaintiff and the Class for their out-of-pocket and other damages that are legally quantifiable and provable, do not cover the full extent of injuries suffered by Plaintiff and the Class, which include monetary damages that are not legally quantifiable or provable.

200. The hardship to Plaintiff and the Class if an injunction is not issued exceeds the hardship to Defendants if an injunction is issued.

201. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the injuries that would result to Plaintiff, the Class, and the public at large.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and Class Members, requests judgment against Defendants and that the Court grant the following:

A. For an Order certifying the Class, and appointing Plaintiff and her Counsel to represent the Class;

B. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiff and Class Members;

C. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the

interests of Plaintiff and Class Members, including but not limited to an order;

i. prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

ii. requiring Defendants and their vendors to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii. requiring Defendants to ensure their vendors delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv. requiring Defendants to provide out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII for Plaintiff's and Class Members' respective lifetimes;

v. requiring Defendants to ensure their vendors implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

vi. prohibiting Defendants from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

vii. requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' and their vendors' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

viii. requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

ix. requiring Defendants to audit, test, and train their and their vendors' security personnel regarding any new or modified procedures;

x. requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' or their vendors' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

xi. requiring Defendants to conduct regular database scanning and securing checks of their own networks, and their vendors' networks;

xii. requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, including their vendors, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying

information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xiii. requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiv. requiring Defendants to implement a system of tests to assess its respective employees' and vendors' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting personal identifying information;

xv. requiring Defendants to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendants' and their vendors' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xvi. requiring Defendants to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves; and

xvii. requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from

Defendants' and their vendors' servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D. For an award of damages, including actual, nominal, statutory, consequential, and punitive damages, as allowed by law in an amount to be determined;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. For prejudgment and post-judgement interest on all amounts awarded;

G. Granting Plaintiff and the Class leave to amend this Complaint to conform to the evidence produced at trial; and

H. Such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands that this matter be tried before a jury.

Dated: September 4, 2025

Respectfully Submitted,

By: */s/ Scott Edelsberg*
Scott Edelsberg (CA Bar No. 330990)
**EDELSBERG LAW, P.A.**
1925 Century Park E #1700
Los Angeles, CA 90067
Tel: (305) 975-3320
Email: scott@edelsberglaw.com

*Attorney for Plaintiff and Proposed Class*